**O. E. HERRING, Plaintiff,**

v.

**Robert HENDISON, Leonard Quashen and W. E. Leonard & Co., Inc., Defendants.**

United States District Court
S. D. New York.

May 9, 1963.

Gasperini & Koch, New York City, for plaintiff.

Stanley Kligfeld, New York City, for defendant Hendison.

LEIBELL, District Judge.

This is an action under Section 12(2) of the Securities Act of 1933 (Title 15 U.S.C. § 77(*l*)) to enforce civil liability in connection with the sale, through interstate communications, of 5,000 shares of Trans Central Industries, Inc., stock. The plaintiff was the purchaser of the stock. His complaint charges that the stock was sold to him by the defendants under false representations made in telephone conversations.

The defendant, W. E. Leonard & Co., Inc., was a stock brokerage house located on William Street in New York City. The defendant, Leonard Quashen, was the owner of Leonard & Co. and also worked there. The defendant Hendison was a stock salesman for W. E. Leonard & Co., Inc., which was later the subject of a proceeding by the Securities Exchange Commission and went out of business. For that reason it was never served with the complaint in this action. The defendant Quashen, the owner of Leonard & Co., was served with the complaint herein and defaulted. Judgment by default was entered against him on October 18, 1962, and execution thereon has been returned unsatisfied.

The defendant Hendison was also served with the complaint herein. He answered and contested the plaintiff's claim at the trial which was held before me on April 22nd.

Plaintiff testified that some one who claimed to be Leonard sold plaintiff 1,000 shares of Trans Central Industries, Inc. stock in late January 1961 after a phone call to plaintiff in North Carolina. The balance of 4,000 shares were sold to plaintiff by the defendant Hendison in early February as a result of a telephone call by Hendison in New York City to plaintiff in North Carolina. In that telephone call Hendison made certain statements concerning the business activities of Trans Central Industries, Inc., the real value of its stock and its prospects. He persuaded plaintiff to buy an additional 4,000 shares of its stock.

As part of plaintiff's proof the deposition of Hendison, taken before trial, was offered by plaintiff and received in evidence. The confirmation slips of W. E. Leonard & Co., which showed the execution dates, price and payment for the two sales totalling 5,000 shares of Trans

Central Industries, Inc. and copies of the two stock certificates, one for 1,000 shares and the other for 4,000 shares issued to plaintiff were received as exhibits at the trial.

The plaintiff testified concerning the telephone conversation he had with someone at Leonard & Co. who spoke as the owner of Leonard & Co. in connection with the purchase of the 1,000 share lot, and concerning three or four telephone conversations plaintiff later had with Hendison. During the first of the telephone conversations with Hendison he urged plaintiff to buy more Trans Central Industries, Inc. stock.

Herring testified that when Hendison telephoned him, plaintiff asked Hendison if he was related to any of the Hendersons in North Carolina and that Hendison explained that there was no "er" in his name, that he spelled it with an "i".

At the trial defendant Hendison took the stand and denied that he had ever had any telephone conversation with plaintiff about Trans Central stock. He stated that he had never had any dealings with Herring either by phone or by mail. Herring could hardly have fabricated the talk he had with Hendison about the spelling of the name Hendison. It was a likely question for Herring to ask Hendison. It has the ring of truth in it.

Defendant Hendison's memory was poor when he was asked to recall the names of some of the people to whom he had sold the Trans Central stock, while employed by Leonard & Co., although selling that stock was his principal occupation during the time he was thus employed. Hendison's compensation at W. E. Leonard & Co., Inc., was 10% of the gross sales of the stock which he himself sold and 5% of the sales where he assisted other employees in making a sale. He had no record of what he received in compensation, but stated that some weeks he earned $100 and in others $400.

The confirmation slip (Ex. 7) on the sale of the 4,000 shares, bears the type-written initials "R.H." and "B.A." The "R.H." are the initials of defendant Hendison; the "B.A." are the initials of a salesman known as "Bobby Allen" employed by Leonard & Co. The "B.A." also appear as the initials on the confirmation slip (Ex. 5) for the sale of the 1,000 shares of the Trans Central stock to Herring.

■ W. E. Leonard & Co., Inc., was a "boiler room" type of brokerage house in which Hendison, an active salesman, had a full opportunity to know the methods employed by the owner and employees to push the sale of Trans Central Industries, Inc. stock by telephone communications. In the instant case the Hendison telephone communications to plaintiff, a doctor in North Carolina, were by long distance calls made at night. The facts in this case are similar in some respects to the "boiler room" operations that were discussed by the Second Circuit Court of Appeals in its recent opinion in Irwin Berko v. S. E. C., 2 Cir., 316 F.2d 137. In that case the appellate court held that the salesman in a boiler room (such as Hendison in this case) is "held to a higher duty to prospective customers than a salesman working out of a legitimate sales operation". If a salesman working in a "boiler room" house claims that he relied on literature furnished by an employer who is engaged in a fraudulent sales campaign, that reliance does not excuse him. In the case at bar Hendison claimed that whatever information he received about Trans Central stock came from his employer and that he relied on that. The Berko case brushes aside that excuse, in the "public interest".

■ I believe the testimony of plaintiff Herring that Hendison telephoned him and made misrepresentations concerning the Trans Central Industries, Inc., and its stock, by which the plaintiff was induced to buy the 4,000 additional shares of stock on February 2, 1962.

Plaintiff Herring paid $1.75 a share for the 5,000 shares of Trans Central Industries, Inc., he bought from Leonard & Co. a total of $8,750. When plaintiff

later sold the 5,000 shares he received only $1,826.82 or about 36½ cents a share, a loss of $1.385 per share.

I am filing herewith Findings of Fact and Conclusions of Law, pursuant to rule 52, F.R.C.P. They set forth the misrepresentations made by Hendison when he sold the 4,000 shares to plaintiff.

 Defendant Hendison is unquestionably liable for plaintiff's loss on the 4,000 shares. Plaintiff, O. E. Herring, is entitled to judgment against defendant, Robert Hendison, in the sum of $5,540.00 with interest thereon from February 2, 1961, plus legal costs and disbursements, as stated in the Findings of Fact and Conclusions of Law.